(No. 67926.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DENNIS FOSKEY, Appellee.

*Opinion filed April 18, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil M. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Renee Goldfarb and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

Sam Adam, Terrance Gillespie and Marc Martin, of Chicago, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Dennis Foskey, was convicted by a jury in the circuit court of Cook County of possession of a controlled substance (heroin) with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(1)) and sentenced

to 12 years' imprisonment. The defendant, along with two codefendants, had also been indicted for conspiracy (Ill. Rev. Stat. 1985, ch. 38, par. 8—2) and solicitation (Ill. Rev. Stat. 1985, ch. 38, par. 8—1) to murder a police officer, but was acquitted.

The trial court, finding that exigent circumstances existed, upheld the warrantless arrest of the defendant and denied his pretrial motion to quash the arrest and suppress statements made by him shortly after his arrest. The trial court also granted the State's motion *in limine* barring the defendant from cross-examining his wife, Sarah, on the ground that certain statements and communications made by her were privileged communications protected under the marital privileges act (Ill. Rev. Stat. 1985, ch. 38, par. 155—1 *et seq.*).

The appellate court held that exigent circumstances did not exist to warrant the arrest of the defendant in his home. (175 Ill. App. 3d 638.) It reversed the defendant's conviction and remanded for a new trial, holding that the statement the defendant made shortly after arrest, that the heroin found in the resulting search of the apartment was his, would be inadmissible as the product of an illegal arrest. The court also held that the defendant was improperly denied his sixth amendment right to confrontation when the trial judge granted the State's motion *in limine* prohibiting the defendant from cross-examining his wife about letters she had sent to him and statements which she had made to him while he was in jail. We granted the State's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315).

Evidence at the pretrial hearing showed that the defendant's wife, Sarah Foskey, was arrested on December 12, 1984, for possession of heroin. Following her arrest, she agreed to supply information on narcotics activity to the Chicago police department, and on December 7 or 8, 1985, Sarah told Officer George Graham that her

husband and Virginia and Jose Terrazas were conspiring to kill the officer. During the next few weeks, she provided the details of meetings held at her home, including advising the police that a man named "Jerry" had been hired to murder Officer Graham for $25,000. On January 2, 1986, Sarah identified John Demopoulous as "Jerry" and Demopoulous was arrested. After his arrest, Demopoulous admitted that he had been hired to kill Officer Graham. On the morning of January 3, 1986, Sarah informed Officer Graham that Virginia and Jose Terrazas were returning to their home in Chicago. The police were aware that the Terrazases frequently left the State. That afternoon, the officers decided to coordinate the arrest of all three suspects, apparently to avoid the possibility that any of the suspects would be tipped off and have the opportunity to avoid arrest. No arrest warrants were obtained. On the afternoon of January 3, after a group of officers had arrested the Terrazases, a second group of officers, who had been waiting outside the defendant's home for approximately 45 minutes, was instructed to arrest the defendant.

When the officers went to the door of the defendant's home, they knocked and announced their office. Receiving no response and finding the door open, they entered the apartment. They found the defendant in the bathroom, ordered him to get dressed and placed him under arrest. After the defendant had been handcuffed and read his *Miranda* rights, Sarah, who had earlier left the apartment, returned. The police asked Sarah to sign a consent-to-search form, which she did. The defendant also signed a consent-to-search form. In the resulting search, the police discovered heroin. When confronted with the drugs, the defendant admitted they were his. The trial court found that probable cause to arrest existed, that exigent circumstances justified the warrantless arrest, and that the resulting confession was valid.

As stated, the appellate court reversed, concluding that exigent circumstances did not exist to justify the warrantless arrest and that the defendant's confession should have been suppressed as fruit of an unlawful arrest. 175 Ill. App. 3d at 643.

After the defendant's arrest, Sarah visited her husband in jail and wrote to him on several occasions. The alleged contents of the communications were admissions that Sarah had fabricated the story of the conspiracy in order to avoid going to jail herself. Sarah was to testify as the principal witness for the State against the defendant and the Terrazases. The defendant, contending that her letters and conversations with him were inconsistent with her prior statements to the police, was prepared to cross-examine her on the communications. The State, in a motion *in limine,* argued that the marital privilege (Ill. Rev. Stat. 1985, ch. 38, par. 155—1) protected the letters and conversations from disclosure. The court granted the State's motion barring the defendant's cross-examination.

We consider here, first, whether the appellate court erred in holding that exigent circumstances did not exist so as to validate the warrantless arrest, and, second, whether the court erred in holding that the defendant's sixth amendment right to confrontation was superior to the witness' claim of the marital privilege.

Constitutional safeguards in section 6 of article I of the constitution of Illinois and in the fourth amendment to the Constitution of the United States in general prohibit police officers from making warrantless, nonexigent entries into a private residence to make an arrest. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Abney* (1980), 81 Ill. 2d 159.) The fourth amendment does not prohibit officers from entering a home without a warrant if exigent or compelling circumstances justify the entry. (*People v. Cobb*

(1983), 97 Ill. 2d 465, 486; *People v. Abney* (1980), 81 Ill. 2d 159, 166, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032.) The burden of demonstrating exigent need for a warrantless search or arrest is on the State. *United States v. Aquino* (10th Cir. 1988), 836 F.2d 1268, 1271, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022; *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749-50, 80 L. Ed. 2d 732, 742, 104 S. Ct. 2091, 2097.

While no list of factors constituting exigent circumstances is exhaustive, this court in *People v. White* (1987), 117 Ill. 2d 194 (citing *People v. Abney* (1980), 81 Ill. 2d 159, and *People v. Yates* (1983), 98 Ill. 2d 502), set out these factors which may be taken into account in assessing exigency in a particular situation: (1) whether the offense under investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained; (3) whether a grave offense is involved, particularly one of violence; (4) whether the suspect was reasonably believed to be armed; (5) whether the police officers were acting upon a clear showing of probable cause; (6) whether there was a likelihood that the suspect would have escaped if not swiftly apprehended; (7) whether there was strong reason to believe that the suspect was on the premises; and (8) whether the police entry, though nonconsensual, was made peaceably.

In determining whether the police acted reasonably, the court must look to the totality of the circumstances confronting the officers at the time the entry was made. (*People v. Yates* (1983), 98 Ill. 2d 502, 515.) The circumstances must militate against delay and justify the officers' decision to proceed without a warrant. (*People v. Abney* (1980), 81 Ill. 2d 159, 168-69.) The guiding princi-

ple in such cases is reasonableness, and each case must be decided on its own facts. *People v. White* (1987), 117 Ill. 2d 194, 216; *People v. Abney*, 81 Ill. 2d at 173-74.

As stated, prior to trial the defendant made a motion to quash the arrest and suppress his confession on the ground that the warrantless arrest was illegal. The trial court denied the motion, finding exigent circumstances sufficient to justify the warrantless arrest. Ordinarily, the decision of a trial court on a motion to quash and suppress will not be disturbed by a reviewing court unless that finding is determined to be clearly erroneous. (*People v. White* (1987), 117 Ill. 2d 194, 209; *People v. Reynolds* (1983), 94 Ill. 2d 160, 165.) When neither the facts nor the credibility of the witnesses is questioned, however, the issue of whether exigent circumstances were present is a legal one and this court will consider the question *de novo. People v. Abney*, 81 Ill. 2d at 168; *People v. Clark* (1986), 144 Ill. App. 3d 7, 11.

Several witnesses, including police officers and the defendant, were presented during the lengthy pretrial hearing. After hearing testimony, the trial court found sufficient factors necessary to justify a warrantless arrest on the ground of exigency. Given the facts, we judge the trial court's conclusion that the facts were sufficient to support the warrantless arrest was erroneous.

There is no question that the trial court properly found probable cause existed to support the defendant's arrest. Probable cause to arrest can be based on an informer's tip, if that tip is found to be reliable. (*People v. Tisler* (1984), 103 Ill. 2d 226.) The existence of probable cause is determined by the trial court based on the totality of the circumstances present. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317; *People v. Clay* (1973), 55 Ill. 2d 501, 504-05.) The trial court found Sarah Foskey's information relating to the conspiracy reasonable and reliable, given her personal

knowledge of and contact with the co-conspirators and given the accuracy of past information supplied by her. (She had supplied Officer Graham with information on five separate occasions which led to four arrests.) The trial court concluded that the information provided by Sarah alone gave probable cause to arrest. The court also found that the evidence of probable cause was made even stronger by the corroborating statements of the co-offender Demopoulous that he had been hired to kill Officer Graham and that the defendant was involved in the plot. The trial court's finding of probable cause was reasonably supported by the facts. That probable cause existed, however, is not alone sufficient to justify a warrantless entry into a suspect's home to effect an arrest. *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.

On the issue of the existence of exigent circumstances, the trial judge considered several of the above listed factors and drew these conclusions. First, the trial judge found that a violent, "horrendous" crime was involved and that the facts related during the hearing indicated that the information that had come to the attention of the police justified the conclusion that the defendant was a dangerous, violent person. Second, the trial judge concluded that prompt action was reasonably required in order to apprehend all three suspects. The judge observed that because the codefendants (the Terrazases) were frequently in and out of Illinois, it was crucial to effect their arrest when the police knew that they ·were in the State. Also important to the trial judge was the fact that the police wanted to coordinate the arrest of all three suspects so as to avoid the possibility that any of them might be tipped off or have the opportunity to avoid arrest. The trial judge next noted that he found no deliberate or unjustifiable delay in the failure of the police to obtain an arrest warrant. Finally, the trial

judge concluded that the police had reason to believe that the defendant was armed and that, given the circumstances, the arrest was made relatively peacefully.

The trial judge, stating that contracting for the murder of a police officer was a "horrendous" crime and that the discussions between the co-conspirators evidenced the character of these individuals, was of course correct. The defendant contends that the conspiracy itself was not a violent crime. The statement is remarkable considering its context. Murder typically is the most violent of crimes. This grave offense demanded investigation and action by the police.

The crime proposed here obviously was grave, but there is nothing to suggest that the defendant's conduct constituted an immediate and clear danger to the police or to the safety of those around him so as to suggest exigency sufficient to justify a warrantless arrest. In *People v. Cobb*, for example, this court held that exigent circumstances existed to justify the warrantless arrest of the defendant because the record showed the police had reason to believe that they were dealing with a dangerous and violent person who was more than likely armed and a threat to public safety. We observed that the concern of the police was reasonable because they had had previous experience with the suspect, who had been charged with homicide and convicted of an armed battery. It was especially significant that the police knew that the defendant had shot an acquaintance at point-blank range without provocation. (*People v. Cobb* (1983), 97 Ill. 2d 465, 484.) Here, although Foskey and his co-conspirators had allegedly contracted for the murder of a police officer, there was no indication that the defendant had a gun or that there was any danger from weapons which would require an unannounced entry. See *People v. Clark* (1986), 144 Ill. App. 3d 7, 11 (there was nothing to support the conclusion that there was any

danger from weapons which called for a warrantless entry); *United States v. Killebrew* (6th Cir. 1977), 560 F.2d 729, 734 (occupant not known to be dangerous); *State v. Olson* (1979), 287 Or. 157, 165, 598 P.2d 670, 674 (burglary suspect not known to be armed); *Commonwealth v. Williams* (1978), 483 Pa. 293, 300, 396 A.2d 1177, 1180 (rifle used in the homicide was in possession of police prior to entry); *People v. Ramey* (1976), 16 Cal. 3d 263, 276, 545 P.2d 1333, 1341, 127 Cal. Rptr. 629, 637 (information available to arresting officers indicated that suspect no longer possessed stolen firearms).

Nor is there support for the conclusion that immediate action was reasonably required. The trial judge found that because the codefendants (the Terrazases) were frequently in and out of the State it was crucial to arrest the Terrazases when the police knew they were in the State. Although the police may have wished to coordinate all of the arrests, this does not justify a failure to obtain arrest warrants. The police presented no evidence here that any of the suspects either knew or was likely to be aware that they were in immediate danger of arrest. In *People v. Day*, the court found no exigent circumstances justifying the warrantless arrest of the defendant though the arrest took place almost immediately after the crime, because there was no need for prompt warrantless action. The court observed that the defendant was unaware of events that had occurred, making it unlikely that his immediate apprehension was necessary either to prevent flight or destruction of evidence. (*People v. Day* (1988), 165 Ill. App. 3d 266, 268.) Further, the court observed that there was no indication that the defendant was armed or violent. In *People v. Miller*, the supreme court of Colorado held that no exigent circumstances existed to support a warrantless arrest though a grave offense was involved. Although the defendant was believed to be armed and probable cause

existed for arrest, the court found no evidence that the defendant was avoiding arrest and there was no evidence that the suspect was aware that the police were about to arrest him. The court concluded that it was not impractical for the officers to obtain a warrant before attempting to arrest the defendant. (*People v. Miller* (Colo. 1989), 773 P.2d 1053, 1057.) Also, in *State v. Olson,* the court held that because a burglary suspect had no reason to believe that the police knew of his participation in the offense, there existed no particular danger of immediate flight and, therefore, exigent circumstances justifying the warrantless arrest were not present. *State v. Olson* (1979), 287 Or. 157, 165, 598 P.2d 670, 674.

Here, the facts do not suggest that immediate action was reasonably required to succeed in making the arrest. In this case, a substantial time had elapsed since the defendant began conspiring with the Terrazases and there was no indication that the defendant or the other offenders knew of the planned arrest or that anything had occurred which would have prompted the defendant to suddenly attempt to flee or to become violent.

Even if it was reasonably necessary for the police to arrest the Terrazases on January 3 when they entered the jurisdiction, the record discloses that the officers had Foskey's home under surveillance for 40 to 45 minutes before arresting him and that they failed to show that immediate entry was required either to prevent the defendant from endangering others, or from destroying evidence. After the Terrazases were taken into custody, the officers clearly could have maintained their surveillance while moving to secure a warrant for the defendant's arrest. In *People v. Rembert,* the court held that the exigency necessary to justify a warrantless arrest in the defendant's home was not present. The officers arrived at the defendant's apartment 24 hours after the

armed robbery occurred. They remained there for 45 minutes without making any attempt to procure a warrant, even though they knew there was no practical way in which the defendant could flee from the apartment. *People v. Rembert* (1980), 89 Ill. App. 3d 371, 376-78.

By contrast, in *People v. Yates*, this court considered the types of circumstances which would suggest that the officers were justified in believing that the defendant was likely to flee if not arrested quickly. In *Yates*, it was observed that a brutal murder had occurred, and there was a clear showing of probable cause and strong evidence to justify the officer's conclusion that the defendant would likely flee if not swiftly apprehended. Specifically, the court held that the police knowledge that the defendant's girlfriend was raising money to enable him to leave the State, and that the police had overheard a conversation which reasonably could have been interpreted as a tip-off to the defendant that the police were "hot on his trail," was sufficient evidence of exigency to justify the warrantless entry. (*People v. Yates* (1983), 98 Ill. 2d 502, 516.) Given the defendant's probable flight, the delay occasioned by having to obtain a warrant reasonably might have substantially increased the possibility of flight and the risk of a violent confrontation, with danger to the officers and others. *People v. Yates*, 98 Ill. 2d at 516. See also *People v. Morrow* (1982), 104 Ill. App. 3d 995 (where the court found exigent circumstances based in part on the fact that there was a good possibility that the defendant would attempt to flee because his son, recognizing the police, turned and ran back into the house, apparently to warn the father of their approach).

Also, in *People v. Abney* we held that exigent circumstances existed to support the defendant's warrantless arrest in his home where the suspect was apprehended 1½ hours after the man he had beaten with a crowbar

and pistol informed the police as to his whereabouts. The short time span between the attack and the arrest, along with the fact that the suspect was armed with deadly weapons and showed violent propensities immediately before being apprehended, established an "unusual opportunity to quickly apprehend an armed suspect." (*People v. Abney* (1980), 81 Ill. 2d 159, 169.) Given the facts related at the hearing, it is clear that the types of exigencies in *Yates, Morrow* and *Abney* were not present here.

We also fail to find support for the trial court's conclusion that no unjustifiable delay was present in the failure of the police to obtain a warrant. The trial judge found that probable cause existed several weeks prior to the arrest of the defendant, after Sarah informed the police of the conspiracy. Unnecessary delay is to be measured not from the time when the police learn of the suspect's location but from the time they have probable cause to arrest. (*People v. White* (1987), 117 Ill. 2d 194, 218.) The trial judge found that Sarah's first informing Officer Graham of the conspiracy was sufficient to establish probable cause for the arrest of all three offenders. If Sarah's information alone was sufficient to establish probable cause, the police had three weeks in which they could have obtained warrants for all three suspects' arrest. That the police were unsure of the Terrazases' whereabouts until the morning of January 3, therefore, did not justify their failure to attempt to obtain arrest warrants. Further, the defendant's whereabouts was known to the police all of the time. The defendant correctly contends that the failure to attempt to get a warrant for his arrest between the time that information of the planned crime became available and the time of the arrest was unreasonable and contradicts the finding that exigent circumstances existed to justify his warrantless arrest.

In *People v. White*, this court observed that if the time between the crime and the discovery of the defendant's whereabouts is not short, it will be less likely that any additional " '[d]elay to obtain a warrant would have impeded a promising police investigation.' " (*People v. White* (1987), 117 Ill. 2d 194, 218, quoting *United States v. Robinson* (D.C. Cir. 1976), 533 F.2d 578, 583.) In *White*, it was held that because there were nearly two weeks between the commission of the crime and the discovery of the suspect's whereabouts, it was extremely unlikely that an additional several hours of delay to obtain a warrant would have enabled the defendant to flee or permitted him to commit another crime. *People v. White*, 117 Ill. 2d at 218.

Here, as in *People v. White*, the fact that more than three weeks had passed between the commencement of the conspiracy and the discovery of the Terrazases' whereabouts, along with the lack of any evidence of likelihood of flight, strongly indicated that the additional delay required to obtain arrest warrants was not likely to impede a successful police investigation.

Finally, the suggestion that the police were justified in believing that the defendant was armed was insufficient to suggest a finding of exigency. The trial judge concluded that the police had reason to believe that the defendant was armed because of the "particular location of his apartment." That was insufficient to establish a reasonable belief that the defendant himself was armed. Where this court has found that the likelihood of the defendant's being armed supported the claim of exigency, the defendant has been connected with the use of or was known to be in possession of a weapon. Here, there was no evidence that the defendant had a criminal history or that he was armed and violent. Too, the defendant's wife was providing information to the police, and it was not unreasonable to assume that she would

have indicated the possibility of armed violence had that been likely.

We judge, therefore, that the totality of the circumstances, at the moment the police decided to enter the defendant's apartment, did not constitute exigent circumstances. Although probable cause existed for the arrest of the defendant for the commission of a serious crime and although the defendant's co-conspirators had just reentered the jurisdiction, the facts known to the police at the time they arrested the defendant certainly did not suggest the immediacy and real threat of current danger or likelihood of flight that was present in other cases where warrantless searches have been held valid by this court. For the reasons given, the defendant's arrest was unlawful.

The State contends that even if the arrest was unlawful, the defendant's subsequent confession to possession of heroin was admissible because it was the product of a valid consensual search. And, even if the defendant's consent to search were not held to be voluntary, the State says, Sarah's consent was unquestionably voluntary. Therefore, the drugs found were the product of a legal search and confronting the defendant with the drugs constituted an intervening circumstance which, under *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, purged the taint of the initial illegality, as it was put in *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

Citing *People v. McAdrian* (1972), 52 Ill. 2d 250, and *People v. Holloway* (1981), 86 Ill. 2d 78, the defendant argues that the question of attenuation, or purging of the taint of illegality, has been waived for purpose of appeal because the State did not raise it in the trial court or in the appellate court. The defendant, however, overlooks *People v. Keller* (1982), 93 Ill. 2d 432, 437, where this court held that when the State is the prevailing

party on a motion to suppress, it would be unfair to hold that it has waived any argument appearing in the record which also might have been raised in support of the court's ruling. (See also *People v. Bolden* (1987), 152 Ill. App. 3d 631, 636.) Here the State prevailed in the trial court and its theory on appeal is supported by the record and is not inconsistent with the position it took in the trial court. The State's attenuation argument has not been waived.

The defendant contends that the consent he gave the police to search his apartment following his arrest was not voluntary and his confession regarding the heroin discovered in the search should be suppressed. The determination that an illegal arrest has occurred is not dispositive of the issue of the admissibility of a subsequent confession. The relevant inquiry is whether the confession was obtained by exploitation of the illegality of the arrest. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) Evidence obtained after an illegal entry need not be suppressed if such evidence was obtained " 'by means sufficiently distinguishable to be purged of the primary taint' " of the illegality. (*People v. White* (1987), 117 Ill. 2d 194, 222, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) In the case of a confession following an illegal arrest, the confession must be " 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.' " *People v. White*, 117 Ill. 2d at 222, quoting *Wong Sun v. United States*, 371 U.S. at 486, 9 L. Ed. 2d at 454, 83 S. Ct. at 416-17.

Under *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, factors to be considered in determining whether a confession was the product of the illegal arrest are: (1) the proximity in time between the arrest and the confession, (2) the presence of intervening circumstances, (3) the purpose and flagrancy of the po-

lice misconduct, and (4) whether *Miranda* warnings were given. (*Brown v. Illinois*, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62; *People v. White*, 117 Ill. 2d at 222.) The burden of showing redeeming attenuation as to evidence obtained through an illegal arrest is on the prosecution. *Brown v. Illinois*, 422 U.S. at 604, 45 L. Ed. 2d at 427, 95 S. Ct. at 2262; *People v. White*, 117 Ill. 2d at 222.

The record discloses that the defendant was arrested and read his *Miranda* rights almost immediately after the police entered his apartment. Shortly after the arrest the defendant signed a consent-to-search form. The search revealed the heroin. When confronted with the evidence, the defendant admitted that it was his. The fact that *Miranda* warnings were given of itself is not sufficient to purge the taint of illegality. *Brown v. Illinois*, 422 U.S. at 603, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261.

Considering the matter of temporal proximity, it is undisputed that the time between the illegal entry, the consent to search, the search and the resulting confession was very brief. According to police testimony, the defendant consented to the search and confessed only a few minutes after the illegal entry and arrest.

The State argues that the police conduct was not flagrant. In *Brown v. Illinois*, the Court said that the police action suggested flagrancy because it had a quality of purposefulness (the detectives admitted that they embarked on the investigation in the hope that some incriminating evidence might be found) and because it was carried out in such a manner as to cause surprise, fear and confusion. (*Brown v. Illinois* (1975), 422 U.S. 590, 605, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262; see also *People v. Avery* (1989), 180 Ill. App. 3d 146, 155; *People v. Bracy* (1986), 152 Ill. App. 3d 566, 572.) Here, there is no evidence of intentional misconduct or that the

police actions were a pretext for an exploratory search. Too, the police had probable cause to arrest and, as the trial judge found, made the entry and arrest without the flagrant misconduct contemplated by *Brown*.

As stated, the State observes that Sarah's consent to search was valid because she and the defendant had common possession of the apartment and she had authority to consent to the search. Where two persons have equal access to or control over premises, either may consent to a search and the evidence seized may be used against either. (*United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50, 94 S. Ct. 988, 993; *People v. Stacey* (1974), 58 Ill. 2d 83, 87; *People v. Koshiol* (1970), 45 Ill. 2d 573, 576; *People v. Bolden* (1987), 152 Ill. App. 3d 631, 635.) The State argues that confronting the defendant with the legally seized drugs constituted an intervening circumstance sufficient to purge the initial illegality. The confrontation of a defendant with properly obtained evidence which induces from the defendant a voluntary confession will be considered an intervening circumstance. (*People v. White* (1987), 117 Ill. 2d 194, 224; see also 4 W. LaFave, Search & Seizure §11.4(c) (1987).) Sarah entered the apartment after the arrest of the defendant. She had authority to consent to a search. The drugs discovered under her consent to search were lawfully seized. Because the incriminating evidence with which the defendant was confronted was obtained independently of his illegal arrest and was not a product of the arrest, there was an intervening circumstance sufficient to purge the primary taint of the illegality. (See *People v. Bracy* (1986), 152 Ill. App. 3d 566, 572 (where the defendant confessed to participating in a murder after he saw his girlfriend at the police station and was told that she was cooperating with the police and after he saw incriminating evidence at the police station which had been seized pursuant to a

consensual search of his girlfriend's apartment); *In re R.S.* (1981), 93 Ill. App. 3d 941 (where the defendant confessed to burglary after being confronted with a stolen clock seized pursuant to a valid search and gathered independently of the defendant's illegal arrest (this court in *People v. White* referred to this as "obviously" untainted evidence capable of inducing a voluntary desire to confess (*People v. White,* 117 Ill. 2d at 225))). See also *People v. Gabbard* (1979), 78 Ill. 2d 88 (where the defendant was confronted with sketches of a robbery suspect resembling himself which were prepared prior to his arrest and which induced his confession); *People v. McFarland* (1987), 161 Ill. App. 3d 163, 168 (where the defendant confessed to armed robbery, burglary and home invasion after he was confronted with a stolen camera recovered from the trunk of the car in which he had been a passenger after the driver/owner consented to a search of the car's trunk).) We observe that the defendant's confession was given because of the confrontation with evidence seized pursuant to Sarah's consent to search and not because of the police misconduct. We need not and do not consider whether the defendant's consent to search was voluntary.

Considering the totality of the circumstances, we judge that the defendant's confession was not obtained by exploitation of the illegal police activity and is not subject to suppression.

Because the issue is likely to be raised on remand, we will consider the State's contention that the appellate court erred in holding that the sixth amendment right to confrontation was superior to Sarah's claim that the statutory marital privilege protected communications made by her to the defendant. In conversations with the defendant and in letters to the defendant while he was in jail, Sarah allegedly admitted that she had fabricated

the story of the conspiracy. This admission was inconsistent with what she had told the police.

The State contends that the trial court properly granted its motion *in limine* prohibiting the defendant from introducing the letters or conversations (through the defendant's testimony regarding the conversation at the jail) into evidence and using them for purposes of cross-examining Sarah. The State observes that the trial court has substantial discretion to determine both the manner and scope of cross-examination (*People v. Coles* (1979), 74 Ill. 2d 393) and that the right to confront witnesses is not absolute, but may be required to yield to other legitimate interests (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038). Private communications between husband and wife, the State argues, are a legitimate interest that should be protected. See *People v. Fritz* (1981), 84 Ill. 2d 72.

The marital privilege, as statutorily codified, provides:

> "In all criminal cases, husband and wife may testify for or against each other: provided, that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during the marriage ***." (Ill. Rev. Stat. 1985, ch. 38, par. 155—1.)

The privilege applies when communications were intended to be of a confidential nature and extends to both oral and written communications from one spouse to another. (*People v. Sanders* (1983), 99 Ill. 2d 262; *People v. Gardner* (1982), 105 Ill. App. 3d 103.) The State claims that Sarah is entitled to assert the marital privilege in this instance to protect against disclosure of her described communications.

Against Sarah's claim of statutory privilege, however, the defendant contends that the trial court's refusal to allow him to cross-examine Sarah concerning the content

of the letters and statements deprived him of his right to confrontation as guaranteed by our and the Federal Constitution. The sixth amendment to the United States Constitution and article I, section 8, of the constitution of Illinois assure the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." Confrontation includes the right of cross-examination (*Douglas v. Alabama* (1965), 380 U.S. 415, 418, 13 L. Ed. 2d 934, 937, 85 S. Ct. 1074, 1076), and the exposure of a witness' lack of credibility or improper motivation in testifying is a proper and important function of this constitutionally protected right (*People v. Harris* (1988), 123 Ill. 2d 113, 144). The defendant contends that he should be able to cross-examine Sarah regarding the content of those communications in order to allow the jury, as trier of fact, to assess Sarah's credibility.

The defendant contends that *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *Salazar v. State* (Alaska 1976), 559 P.2d 66, are governing authority here and require a holding that the defendant's right to invoke the sixth amendment's protection is superior to the witness' exercise of the statutory marital privilege. In these decisions the courts resolved a direct conflict between a criminal defendant's assertion of his sixth amendment right to confrontation and a witness' opposing claim of privilege under State law, in favor of the defendant. In *Davis v. Alaska*, a State statute prohibited disclosure of juvenile delinquency findings. The defendant sought to cross-examine a State witness regarding such findings in order to show that the witness' identification of the defendant may have been motivated by an apprehension that the witness would be suspected of the crime or by a fear that his probation would be revoked for failing to cooperate with the prosecutor. The Supreme Court held that under the facts, the defendant's right to confrontation was superior to the State

policy of shielding a juvenile offender's court records. The Court stated, "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Davis v. Alaska,* 415 U.S. at 320, 39 L. Ed. 2d at 356, 94 S. Ct. at 1112.

In *Salazar v. State* the supreme court of Alaska held that when the exercise of a privilege based on public policy (specifically, the marital privilege) conflicts with the defendant's constitutional right of confrontation, the constitutional right controls. (*Salazar v. State,* 559 P.2d at 79.) There, the State's chief witness in a murder prosecution told his wife that he and not the defendant was responsible for the murder involved. At trial, the defendant sought to question the witness' wife about her husband's confession to prove that fear of his own prosecution had motivated his false testimony. The witness asserted the marital privilege, but the court held that the witness' assertion of the privilege could not outweigh the defendant's right to confront the witness with such information. To do so, the court said, would deny the defendant meaningful confrontation and the ability to demonstrate the possibility of bias on the part of the State's crucial witness. *Salazar v. State,* 559 P.2d at 78.

The defendant contends that the witness' claim of marital privilege here should be overcome by his right to confront the witness on the same grounds that the privileges in *Davis* and *Salazar* were overcome. The State contends, however, that this case is distinguishable from *Davis* and *Salazar* because here the excluded evidence would have added nothing to the defendant's case. In both *Davis* and *Salazar,* it says, the witness asserting the privilege was a critical witness to the State's case and the privileged material was the only means available for the defendant to expose the witness' bias or lack of

credibility. In this case, the State maintains that the jury was made aware of Sarah's motives to testify falsely, *i.e.*, she cooperated with the police in the hope that she would receive favorable consideration on the drug charges pending against her, and the credibility of her testimony was attacked on specific instances, *i.e.*, she admitted that she had lied to the police and the defendant was able to show inconsistency in her testimony. Also, because the letters and conversations were directed to a claimed falsification of the conspiracy charge, which the State argues will be irrelevant on remand since the defendant was acquitted on that charge, the State contends the letters are irrelevant to the drug charges and any impeachment value would be merely cumulative. The State also argues that Sarah is not a critical witness on whose testimony the defendant's conviction rests, because the State had the defendant's confession and other evidence to support the charges against the defendant.

We would observe that the sixth amendment right will not supersede a statutory privilege, such as is involved here, in every case where a conflict appears. As the Supreme Court in *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 295, put it, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) Also, although the Supreme Court in *Davis* held that the defendant's right to confront witnesses had to be preferred to the witness' claim of privilege, the holding was limited to the facts of the case and did not suggest that the right to confrontation will take precedence over the statutory privilege in every case of conflict. (*Davis v. Alaska*, 415 U.S. at 320, 39 L. Ed. 2d at 356, 94 S. Ct. at 1112 (Stewart, J., concurring).) In *Davis*, the material

the prosecution claimed should be made available for cross-examination represented the only material available with which the chief prosecution witness could be impeached. As we observed in *People v. Foggy* (1988), 121 Ill. 2d 337, 350, the confrontation right under the sixth amendment prevailed in *Davis* because the defendant knew of specific information that would show bias or motive to fabricate on the part of the prosecution witness and because the defendant had no other means of exposing the possible bias. In *Foggy*, which the State cites as support for its contention that the statutory privilege should prevail here, the court held that the refusal to disclose statutorily protected confidential communications between a rape victim and a rape counselor did not deny the defendant his sixth amendment right to confrontation. The court reached this conclusion, however, because the defendant failed to show that he knew of specific information that would demonstrate bias or motive to fabricate and because the defendant had access, for purposes of cross-examination, to an array of unprivileged statements made by the complaining witness to other persons following the offense. (*People v. Foggy*, 121 Ill. 2d at 349.) *Foggy* is clearly distinguishable from this case. Here the defendant was aware of specific information that had the potential to demonstrate the witness' bias and motive to falsify her testimony.

It is true that the State has other evidence with which to support its case against the defendant, but Sarah is obviously a sensitive and important witness and the credibility of her testimony is extremely relevant. As the Supreme Court stated in *United States v. Abel* (1984), 469 U.S. 45, 52, 83 L. Ed. 2d 450, 457, 105 S. Ct. 465, 469, the exposure of a witness' "bias is almost always relevant because the jury *** has historically been entitled to assess all evidence which might bear on

the accuracy and truth of a witness' testimony." Here the claimed content of her letters and conversations with the defendant, specifically, that she had fabricated the conspiracy charges, had the clear potential for devastating the credibility of her testimony. Even though defense counsel was able to question Sarah about her involvement with drugs and her cooperation with the police, an opportunity to cross-examine Sarah on the question of fabrication was surpassingly important to a determination of her credibility. The other evidence available to challenge her testimony was clearly overshadowed by the claimed letters and conversations involved.

Further, where we must balance the defendant's right to confront witnesses against the witness' claim of marital privilege, the policy concerns underlying the marital privilege must be considered. The appellate court correctly commented that the marital privilege was intended to foster marital harmony. (175 Ill. App. 3d at 643.) It is only reasonable to judge that the legislature, in protecting an unwilling spouse from being required to testify against the other, was interested in preserving and promoting marital harmony as a matter of social policy. Here, the intendment of the statutory privilege would not be served by preferring the claim of marital privilege. The defendant's wife had already cooperated with the police and acted against her husband's interests at trial. The letters and conversations for which she claimed privilege would have shown that she fabricated her testimony to avoid a criminal prosecution. Barring the defendant from cross-examining his wife about these communications and admissions certainly could not, under the circumstances, further a legislative policy of preserving and promoting marital harmony. The defendant's right to confrontation should, therefore, prevail against his wife's claim of marital privilege. See, *e.g.*, *State v.*

*Heistand* (Mo. 1986), 708 S.W.2d 125; *People v. Mohammed* (1984), 122 Misc. 2d 504, 470 N.Y.S.2d 997.

For the reasons given, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed.*