NOTICE
Decision filed 04/04/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 140449

NO. 5-14-0449

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 13-CF-328 |
| | ) | |
| LENARD A. SMOCK, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Barberis and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Saline County, the defendant, Lenard A. Smock, was convicted of methamphetamine possession (720 ILCS 646/60(a) (West 2014)) and disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2014)). He was sentenced to 5 years' imprisonment for possession of methamphetamine and 30 days in the Saline County jail for disorderly conduct to run concurrently with the 5-year sentence. On appeal, the defendant contends that (1) the trial court erred in denying his motion to suppress evidence obtained incident to a warrantless arrest in his home, (2) the trial court abused its discretion by refusing to appoint substitute counsel from outside the public defender's office, (3) the circuit clerk erroneously assessed $124.80 in witness fees, and (4) he is entitled to a $5 *per diem* presentence credit against his eligible fines. For the reasons that follow, we reverse the defendant's

1

convictions and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3    On November 27, 2013, the defendant was charged by criminal information with possession of methamphetamine (count I), possession of a hypodermic needle (count II), and disorderly conduct (count III). These charges arose from the investigation of a noise complaint that resulted in the warrantless arrest of the defendant inside of his trailer.

¶ 4    The trial court appointed Assistant Public Defender Lowell Tison to represent the defendant. On December 12, 2013, the defendant instructed Tison, via notarized letter, to file a motion to suppress evidence, claiming that the police had violated the defendant's fourth and fourteenth amendment rights when they entered his home to effectuate a warrantless arrest. Despite this letter, Tison did not move to suppress the evidence. On March 21, 2014, the defendant filed a *pro se* "Motion to Quash and Suppress." At a hearing held that same day, Tison declined to adopt the *pro se* motion on the defendant's behalf. The defendant then asked the trial court to appoint him an attorney from outside of the public defender's office. The defendant explained to the court that he had prior experience with having been represented by the assistant public defenders in Saline County and did not believe that they would adequately represent his interests. The court refused to appoint substitute counsel, and the defendant opted to proceed as his own attorney.

¶ 5    On April 1, 2014, the trial court held a hearing on the defendant's *pro se* motion to suppress. The defendant and the two arresting officers testified at the hearing. Generally, the testimony established that on November 23, 2013, at approximately 1:30 a.m., Detective Curt Hustedde and police officer Kenny Shires responded to a noise complaint from a resident in a trailer park. They proceeded to 28 West Park Street in Harrisburg, Saline County. The officers

2

met with the complainant, Bradley Reed, who indicated that someone inside the trailer next door was banging on its walls, while yelling and cursing. As the officers were speaking with Reed, they too were able to hear the noise coming from inside the trailer. The officers asked Reed if he would like to file a complaint against the defendant for disorderly conduct. Reed indicated he would like to do so and filed a written statement with the officers alleging the defendant had committed the offense of disorderly conduct. The officers proceeded next door to the defendant's residence to arrest him for disorderly conduct.

¶ 6    The defendant testified that when the officers knocked on his front door, he told them three times not to enter his house without a warrant. He assured the police officers he "would cease and desist as far as the noise was concerned." The officers told the defendant they would not enter his home. Nevertheless, when he opened the door, Officer Shires informed the defendant that he was under arrest and reached out to grab the defendant by the hand.

¶ 7    On cross-examination, the defendant was asked by the State whether the officers asked him to come out of his home. The defendant responded, "Yes, sir, they did. And I told them I wasn't coming outside." The defendant then testified that when Officer Shires reached out to grab him, he ran inside his trailer. The defendant stated that when he ran, "They chased me from my porch into my living room." One of the officers tazed the defendant in his living room before placing him under arrest.

¶ 8    On direct examination, Detective Curt Hustedde testified that when he arrived at Reed's residence, Reed expressed his frustration that the officers had been there in the past because of the banging on the wall and other disturbances caused by the defendant, yet nothing had been done. Detective Hustedde indicated that if Reed were willing to file a complaint against the defendant for disorderly conduct, the officers would arrest the defendant. Reed signed the written

3

statement, and the officers proceeded next door to arrest the defendant. The defendant refused to come outside when Detective Hustedde and Officer Shires knocked on the defendant's door. The officers assured the defendant that they just needed to talk to him. When asked whether the defendant came outside, Detective Hustedde responded, "He didn't come outside, he opened the door." Detective Hustedde further testified that when the defendant retreated into the trailer, the officers pursued him through the open door, intending to place the defendant under arrest. When they entered the kitchen area, the defendant threatened Officer Shires with a two-liter plastic bottle. Detective Hustedde explained that this was his reason for tazing the defendant to subdue him. The officers then placed the defendant under arrest.

¶ 9    On cross-examination, Detective Hustedde testified that he had been to the defendant's trailer on other occasions because of complaints from the residents in the trailer park. On some of those prior occasions, the defendant had been outside of the trailer "wandering and banging." However, on the night in question, they were responding to "the noise from inside [the defendant's] residence." Detective Hustedde confirmed that the defendant told the officers to leave his property if they did not have a warrant. He also testified that he told the defendant that they just needed to talk with him and that they would not leave until he opened the door. On redirect, Detective Hustedde clarified that after the defendant opened the door, he was standing at the threshold of the door but that he never stepped outside of the residence.

¶ 10   Officer Kenny Shires testified that when the defendant opened the door, he stood in the doorway of the trailer but did not step outside. Officer Shires stated that at this point he explained to the defendant why the officers were there. Specifically, Officer Shires indicated that he was placing the defendant under arrest for disorderly conduct. The officer further testified that he tried to "get a hold of [the defendant]" prior to the defendant's retreat into the home. Officer

4

Shires was not asked about the tazing incident. He did testify, however, that a search of the defendant's person incident to his arrest yielded a hypodermic needle and a wadded-up coffee filter that ultimately proved to contain a small amount of methamphetamine.

¶ 11 On cross-examination between the defendant and Officer Shires, the following colloquy took place:

"Q. When I ran down the hallway you were standing in the doorway where I couldn't shut the door; is that correct?

A. I was standing at the doorway.

Q. In the doorway. They swing—the door swings out?

A. Okay.

Q. Right? You were standing on my porch, correct?

A. Yes, sir.

Q. And I was inside the trailer, correct?

A. Correct."

¶ 12 Following arguments, the trial court denied the defendant's *pro se* motion to suppress and made the following findings of fact:

"[T]he defendant opened the dwelling door in an outward position, placing Officer Shires between the opened door and the entrance to the trailer. As the defendant was standing on the porch in the open doorway, Officer Shires told the defendant that he was under arrest for disorderly conduct, and the defendant stated that he was not going to jail, and ran into the dwelling, at which time the officers pursued the defendant into the trailer, apprehending him in the kitchen or hallway area, and placed him under arrest. The officers removed the defendant from the dwelling, and before placing him in the squad

5

car, patted the defendant down, and discovered alleged methamphetamine and a hypodermic needle in the defendant's pocket."

The court went on to make the following conclusions of law:

"[A]t the time Officer Shires told the defendant he was under arrest, the defendant was standing in the open doorway of his dwelling, and therefore was in a public place, and was subject to a warrantless arrest. Based upon the probable cause known to Officers Hustedde and Shires, his fleeing from the open doorway into the dwelling did not preclude the officers' warrantless entry into the home in 'hot pursuit' of the defendant so as to effectuate the arrest that initially was attempted while the defendant was standing in the open doorway."

¶ 13    The defendant filed a motion to reconsider the trial court's denial of his *pro se* motion to suppress. The defendant argued that he told the officers three times not to come into his home without a warrant, that he never stepped outside onto his porch, that he did not flee from a public place, and that he did not commit a crime in a public place. On June 3, 2014, the trial court denied the defendant's motion to reconsider.

¶ 14    The case was set for jury trial on July 16, 2014. Before the jury was impaneled, the defendant advised the court that he wished to be tried *in absentia*. The court admonished the defendant regarding the consequences of proceeding *in absentia*, and despite these admonishments, the defendant indicated he wanted the proceedings to continue without him being present. The court found that the defendant knowingly and intelligently waived his right to be present and participate in his trial. Therefore, the case proceeded to trial without the presence of the defendant. Consequently, there were no objections made during trial on the defendant's behalf, as he was not present, nor was he represented by counsel.

6

¶ 15    Just prior to delivering its opening statement to the jury, the State moved to dismiss count II (possession of a hypodermic needle), leaving count I and count III for consideration by the jury. The State called Detective Hustedde and Officer Shires to testify. Their testimony was substantially similar to the testimony they gave during the hearing on the defendant's *pro se* motion to suppress. The State also called Bradley Reed, who testified regarding the circumstances of having made the noise complaint. Reed further indicated that he signed the complaint against the defendant alleging disorderly conduct. Additionally, Thomas Sadowski, a forensic scientist, testified that he used a gas chromatograph spectrometer to confirm that the white powder found in the coffee filter taken from the defendant was methamphetamine. At the conclusion of argument, and after deliberations, the jury found the defendant guilty of possession of methamphetamine (count I) and disorderly conduct (count III).

¶ 16    The trial court held a sentencing hearing on August 26, 2014, which the defendant did not attend. Two security officers from the Saline County jail testified that the defendant told them that he wished to be absent from the sentencing hearing. Based on this testimony, the trial court found that the defendant knowingly and voluntarily waived his right to be present at sentencing. The trial court sentenced the defendant to 5 years' imprisonment on count I, for possession of methamphetamine, to run concurrently with 30 days' incarceration in the Saline County jail for disorderly conduct (count III). The trial court also ordered the defendant to pay a number of fines and awarded him credit for time served from November 23, 2013, to August 26, 2014. The defendant did not file a posttrial motion, and this appeal followed.

¶ 17                                    ANALYSIS

¶ 18    The defendant first argues that the trial court erred in denying his motion to suppress. The defendant claims that the officers' entry into his trailer to arrest him was unlawful because they

7

lacked a warrant and the exigent circumstances necessary to justify a warrantless intrusion were not present. The State contends that the warrantless entry was justified because the officers were engaged in "hot pursuit" of the defendant at the time. We agree with the defendant.

¶ 19    In reviewing the trial court's determination on a motion to suppress, we apply a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). A court's findings of fact are afforded great deference on review and will be reversed only if they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. We remain free, however, to independently conduct our own analysis of the facts in relation to the issues and draw our own conclusions as to what relief should be granted. *Luedemann*, 222 Ill. 2d at 542. Therefore, we review *de novo* the ultimate question of whether to grant or deny the motion to suppress. *Luedemann*, 222 Ill. 2d at 542.

¶ 20    We first examine whether the officers' entry into the defendant's trailer was lawful. The chief evil against which the fourth amendment to the United States Constitution is directed is the physical entry into the home. *People v. Wear*, 229 Ill. 2d 545, 562 (2008). To protect against the unjustified entry by law enforcement into the home, the fourth amendment has "drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980); *People v. Davis*, 398 Ill. App. 3d 940, 948 (2010). Thus, the warrantless entry by police officers into a home and seizures inside the home are presumptively unreasonable under the fourth amendment, even with probable cause. *Wear*, 229 Ill. 2d at 562. Police may not reasonably cross the threshold of a private citizen's home without a warrant, unless exigent circumstances justify the intrusion. *Payton*, 445 U.S. at 590. The State carries the burden of proving that exigent circumstances required a warrantless search or arrest. *People v. Foskey*, 136 Ill. 2d 66, 75 (1990).

¶ 21    "In reviewing the propriety of a warrantless entry into a private residence under claimed

exigent circumstances, the guiding principle is reasonableness ***." *Davis*, 398 Ill. App. 3d at 948. The issue must be decided on a case-by-case basis. *Foskey*, 136 Ill. 2d at 75-76; *Davis*, 398 Ill. App. 3d at 948. The following is a nonexhaustive list of factors that a reviewing court may consider to help determine whether the police acted reasonably, given the totality of the circumstances at the time of the warrantless entry:

"(1) whether the offense under investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained; (3) whether a grave offense is involved, particularly one of violence; (4) whether the suspect was reasonably believed to be armed; (5) whether the police officers were acting upon a clear showing of probable cause; (6) whether there was a likelihood that the suspect would have escaped if not swiftly apprehended; (7) whether there was strong reason to believe that the suspect was on the premises; and (8) whether the police entry, though nonconsensual, was made peaceably." *Foskey*, 136 Ill. 2d at 75.

¶ 22    As noted previously, the foregoing factors represent only some of the criteria to be considered by the court. Each case must be decided on its own facts, and the court should not apply these factors rigidly in its determination of the circumstances facing the officers at the time they decided to proceed into the defendant's home, without a warrant, to arrest him. The questions are whether the officers acted reasonably and whether the circumstances militated against delay such as to justify the intrusion into the defendant's trailer. *Davis*, 398 Ill. App. 3d at 948.

¶ 23    In this case, the parties do not dispute that the officers lacked a warrant, and that the defendant did not consent to the warrantless entry into his trailer. While it is true that the defendant's arrest occurred in close proximity to the commission of the misdemeanor offense,

that the officers did not engage in any unjustifiable delay in their arrest of the defendant, that the police officers had probable cause to arrest the defendant, and that the officers knew the defendant was in his trailer, we are not persuaded that, without more, the officers' warrantless intrusion was justified. Rather than procuring a warrant, the officers proceeded directly from their meeting with Reed to the defendant's residence in order to arrest him for disorderly conduct. The Class C misdemeanor of disorderly conduct is neither a grave offense nor a crime of violence. See *People v. Olson*, 112 Ill. App. 3d 20 (1983) (concluding that a warrantless home entry was not justified to arrest a defendant for the nonviolent Class C misdemeanor offense of possession of cannabis). There was clearly reason to believe the defendant was on the premises, but there was no reason to believe that he possessed any weapons, posed a threat of current danger, or was a flight risk. Detective Hustedde testified he had been to the defendant's trailer before but did not indicate that the defendant had posed any particular problem in his encounters with the detective. The circumstances indicate that the defendant was not going to evade his arrest by leaving the area where he resided. There is simply nothing in the record that indicates why the slight delay involved in obtaining an arrest warrant for the defendant would have impeded the officers' investigation of the offense or the ultimate apprehension of the defendant.

¶ 24     This case is similar to *Davis*, 398 Ill. App. 3d 940. In *Davis*, the police had probable cause to arrest the defendant for the crime of battery. The officers proceeded without a warrant to an apartment building where the defendant resided with his girlfriend. One officer entered the building and was standing in the common hallway in front of the defendant's apartment door. The defendant opened the door and, seeing that he was face-to-face with a police officer, immediately turned and fled into the apartment. The officer pursued the defendant through the open door and arrested him inside the dwelling, approximately four feet from the entryway.

10

*Davis*, 398 Ill. App. 3d at 942. The *Davis* court held that the circumstances surrounding the warrantless entry into the defendant's home did not rise to the level of exigent circumstances. *Davis*, 398 Ill. App. 3d at 949. In doing so, the court observed that the officers acted quickly and without any unjustifiable delay. The court also determined that even though the alleged offense was battery, there was no evidence in the record that this offense was particularly grave or that the defendant was armed or otherwise posed a threat to the police or others. *Davis*, 398 Ill. App. 3d at 949.

¶ 25    In this case, the entry into the defendant's home was neither peaceable nor consensual. The State offered no evidence that the defendant had a violent criminal background or that he was likely to flee unless apprehended immediately. Likewise, at the time the officers entered the defendant's home, they did not know that there was a substantial risk that evidence, the methamphetamine, would be lost. They were at the defendant's trailer to arrest him for the misdemeanor offense of disorderly conduct. In fact, they could have simply handed him the ticket, with an appearance date, and left. Instead, the officers crossed the threshold of the defendant's home and chased him into his kitchen. The officers then arrested the defendant after using a taser gun to subdue him. Therefore, given the record before us, we find there was insufficient evidence to show the existence of exigent circumstances to justify the warrantless entry into the defendant's trailer to effectuate his arrest.

¶ 26    The State argues that the entry into the defendant's trailer was justified under the doctrine of "hot pursuit." "In addition to the exigent-circumstances exception to the warrant requirement of the fourth amendment discussed above, police also may enter a private residence without a warrant to effectuate the arrest of a fleeing suspect of whom the police are in 'hot pursuit.' " *Davis*, 398 Ill. App. 3d at 951. Under the doctrine of "hot pursuit," police officers may enter a

11

private home, without a warrant, to effectuate an arrest where the arrest has been set in motion in a "public place." *United States v. Santana*, 427 U.S. 38, 42 (1976).

¶ 27    In *Santana*, the police had probable cause to arrest Santana immediately after a controlled heroin buy. Santana had allegedly sold the heroin to a police informant and was holding the purchase money. The serial numbers for the money used to purchase the heroin had been recorded by the police prior to the buy. *Santana*, 427 U.S. at 39-40. As the police officers approached Santana's home to arrest her, they observed her standing directly in the front doorway such that one step forward would have put her outside of the home and one step backward would have put her in the vestibule of her residence. *Santana*, 427 U.S. at 40 & n.1. The officers could see that Santana was holding a brown paper bag in her hand. As the officers shouted "police" and displayed their identification, Santana retreated into the vestibule of her home. The officers followed her through the open door and arrested her in the vestibule area. When she was told to empty her pockets, she produced several bills, some of which displayed the serial numbers of the money used to buy the heroin. *Santana*, 427 U.S. at 40-41. The United States Supreme Court held that a suspect may not defeat an arrest that was set in motion in a public place by escaping to a private place. *Santana*, 427 U.S. at 43. The Court concluded that Santana had no expectation of privacy, as her presence at the doorway of the house was tantamount to being in a "public" place. The Court found that "[s]he was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Santana*, 427 U.S. at 42. The Court thus held that because Santana was in a public place when the police began to arrest her, she could not defeat an otherwise proper arrest by retreating into her home. The Court also noted that there was a "realistic expectation" that had the officers not pursued Santana into her home, the evidence may

have been lost. *Santana*, 427 U.S. at 43.

¶ 28    In *Wear*, our supreme court had the opportunity to review the doctrine of "hot pursuit" and adopted the reasoning in *Santana*. In *Wear*, a police officer initiated a traffic stop on a public thoroughfare after having witnessed the defendant's car swerving and violating several traffic laws. The defendant refused to stop, despite the fact that he was being followed by the police car with its lights activated. Instead, the defendant drove several blocks to his home and began to walk toward his front door, despite the officer's verbal commands to halt and return to his vehicle. *Wear*, 229 Ill. 2d at 550. At the entry to the defendant's dwelling, he stated, " 'I made it home.' " *Wear*, 229 Ill.2d at 565. The officer indicated that he believed the defendant's breath smelled of alcohol. The defendant then entered the home and the officer followed, ultimately placing the defendant under arrest. Our supreme court found that the officer had probable cause to arrest the defendant when he was on the public highway. *Wear*, 229 Ill. 2d at 565-66. Further, when the defendant was standing at his doorway, he was in a "public" place, as defined by the *Santana* Court. *Wear*, 229 Ill.2d 568. Therefore, the officer was already in "hot pursuit" as he entered the home without a warrant. Accordingly, the *Wear* court found the warrantless entry was excused by the doctrine of "hot pursuit." *Wear*, 229 Ill. 2d at 571.

¶ 29    The case *sub judice* is distinguishable from both *Santana* and *Wear*. In this case, the pursuit of the defendant did not originate in a public place. The defendant and both of the officers testified that the defendant never left the confines of his home. There was no testimony that the defendant stepped out onto the porch or ever crossed the threshold of his doorway. In fact, when asked whether the defendant ever stepped out of his trailer, Officer Shires indicated that the defendant remained inside of his trailer. Additionally, there was no testimony describing the degree to which the defendant was exposed to public view, speech, hearing, and touch once

13

he opened the door of his trailer. Unlike *Wear*, this is not a case where the officers were in "hot pursuit" when they knocked on the defendant's door. And there are no facts similar to *Santana*, where the suspect was in public view as the police were approaching the house and the officers saw that she was holding a brown bag suspected to contain heroin. In this case, the chase of the defendant began only after he was assured by the officers, as they spoke to the defendant through his closed door, that they were not there to arrest him. It is apparent that the officers only made these statements to convince the defendant to open his door. Once the door was opened, Officer Shires attempted to grab the defendant through the doorway to effectuate the arrest. Only then did the alleged "hot pursuit" begin. Therefore, we believe the State failed to meet its burden to show that the defendant was sufficiently exposed to the public to have been considered in a "public" place, without any expectation of privacy. We find that the trial court's denial of the defendant's motion to suppress was against the manifest weight of the evidence and that the defendant's motion to suppress should have been granted. We therefore vacate the convictions of the defendant.

¶ 30    Having determined that the motion to suppress should have been granted, we must remand these proceedings to the trial court. Double jeopardy does not bar a new trial where, as in the present case, reversal is the result of an error in the proceedings leading to the conviction and not the result of evidence that is legally insufficient to sustain a jury's verdict. *People v. Stofer*, 180 Ill. App. 3d 158, 171 (1989). Having concluded that the defendant's convictions must be set aside because of error by the trial court, we find that double jeopardy does not prohibit a new trial. Accordingly, we reverse the defendant's convictions for unlawful possession of methamphetamine (count I) and disorderly conduct (count III).

¶ 31    Having now reversed the convictions of the defendant, we need not decide the

14

defendant's remaining issues. The defendant is free to renew his request for the appointment of private counsel, and we vacate the fees and fines assessed against the defendant. For the foregoing reasons, the judgment of the circuit court of Saline County is reversed, and the cause is remanded for further proceedings consistent with the holdings herein.

¶ 32    Reversed and remanded.

2018 IL App (5th) 140449

NO. 5-14-0449

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 13-CF-328 |
| | ) | |
| LENARD A. SMOCK, | ) | Honorable |
| | ) | Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**     April 4, 2018

---

**Justices:**     Honorable Judy L. Cates, J.

Honorable John B. Barberis, P.J., and
Honorable Thomas M. Welch, J.
Concur

---

**Attorneys
for
Appellant**

Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard,
Deputy Defender, Warner S. Brockett, Assistant Appellate Defender,
Catherine Hart, Assistant Appellate Defender, Office of the State
Appellate Defender, Fourth Judicial District, 400 West Monroe Street,
Suite 303, P.O. Box 5240, Springfield, IL 62705-5240

---

**Attorneys
for
Appellee**

Hon. Michael Henshaw, State's Attorney, Law Enforcement and
Detention Center, 1 North Main Street, Suite 3, Harrisburg, IL 62946;
Patrick Delfino, Director, David J. Robinson, Acting Deputy Director,
Chelsea E. Kasten, Staff Attorney, Office of the State's Attorneys
Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box
2249, Mt. Vernon, IL 62864

---