# Illinois Official Reports

## Appellate Court

---

### *People v. Gutierrez*, 2019 IL App (3d) 180405

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICARDO GUTIERREZ, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0405 |
| Filed | November 15, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 07-CF-2219; the Hon. Carla A. Policandriotes, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Todd T. McHenry, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1        After a jury trial, defendant, Ricardo Gutierrez, was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)) and was sentenced to 68 years in prison. On direct appeal, this court found that defendant's arrest was illegal and remanded the case for the trial court to conduct an attenuation hearing to determine if defendant's statements to police were admissible despite the illegal arrest. *People v. Gutierrez*, 2016 IL App (3d) 130619, ¶ 78. The trial court conducted an attenuation hearing, concluded that the statements were admissible, and reinstated defendant's conviction. Defendant appeals, arguing that the trial court erred in (1) finding that defendant's statements to police were sufficiently attenuated from the illegal arrest so as to be admissible at defendant's trial and (2) refusing to allow defendant to call as a witness at trial a codefendant, Gabriela Escutia, who was going to assert her fifth amendment right not to testify, and refusing to admit at trial Escutia's petition for an order of protection against the person who later became the victim of the murder. We agree with defendant's first argument. Because the evidence relative to defendant's second argument will likely change upon remand, we do not rule upon defendant's second argument. Accordingly, we reverse defendant's conviction and remand this case for a new trial with defendant's statements to police suppressed.

¶ 2                                    I. BACKGROUND

¶ 3        On October 28, 2007, Javier Barrios was shot and killed in a parking lot near the Meijer gas station in Plainfield, Illinois. After police officers identified Barrios as the victim, they ran his information and learned that codefendant, Gabriela Escutia, had an order of protection against him. The police officers sent an exigent circumstances request to the phone company to obtain Escutia's cell phone information and, with the help of Secret Service agents, learned of an alternative billing address for Escutia in Chicago, Illinois. That address turned out to be the address of defendant's residence. Several police officers went to that address during the early morning hours and found Escutia sleeping in bed with defendant. Defendant and Escutia agreed to accompany police to the Plainfield police station to answer questions. Defendant and Escutia were transported to the police station by the police in separate vehicles. Defendant was handcuffed for a short period of time during that transport (due to transportation issues, defendant was initially transported to the Chicago police station and was handcuffed during that portion of the transport).

¶ 4        On the way to the Plainfield police station, Escutia told police that she and defendant had shot Barrios. When defendant arrived at the Plainfield police station, he was placed into an interview room. Defendant later waived his *Miranda* rights. After being confronted with Escutia's statements, defendant gave oral and written statements incriminating himself in Barrios's murder. The interview was recorded by the police. Defendant gave his statements to police approximately six hours after his arrest.

¶ 5        Defendant and Escutia were subsequently charged with the first degree murder of Barrios. Prior to trial, defendant filed a motion to suppress his statements to police, claiming that the statements were the product of an illegal arrest. After a hearing, the trial court denied the motion.

¶ 6        Defendant's case proceeded to a jury trial. At the conclusion of the trial, the jury found defendant guilty of first degree murder, and defendant was subsequently sentenced to 68 years

in prison. On direct appeal, defendant argued that the trial court erred in denying his motion to suppress evidence. *Id.* ¶ 53. A panel of this court, with one justice dissenting, agreed with defendant and found that defendant had been illegally arrested at his residence prior to being transported to the police station. *Id.* ¶¶ 57-71. This court then remanded the case for the trial court to hold an attenuation hearing. *Id.* ¶ 78.

¶ 7        In January 2018, an attenuation hearing was held by the trial court. Neither the State nor defendant presented any additional evidence. After listening to the arguments of the attorneys, the trial court took the case under advisement.

¶ 8        In May 2018, in a separate appeal, a different panel of this court, with one justice dissenting, found that Escutia's statements to the police at the police station were illegally obtained because the police officers deliberately delayed in reading Escutia her *Miranda* rights so that they could obtain statements from her. *People v. Escutia*, 2018 IL App (3d) 140509-U, ¶¶ 29-30. This court implied in that decision that Escutia was illegally arrested at defendant's residence that morning, along with defendant. *Id.* ¶ 29. This court found, therefore, that the oral and written statements that Escutia had made at the police station were subject to suppression. *Id.* ¶¶ 30, 32. This court reversed Escutia's conviction of first degree murder and remanded for a new trial with the statements in question suppressed. *Id.* ¶ 38.

¶ 9        In July 2018, the trial court resumed the attenuation hearing in the instant case. At the outset of the resumed hearing, the trial court asked the State and defense counsel if there were any new matters of fact or law that should be brought to the trial court's attention. Both attorneys responded that there were not. Neither the State nor defense counsel informed the trial court of this court's decision in the *Escutia* appeal. The trial court concluded that defendant's statements to police were sufficiently attenuated from defendant's illegal arrest so as to be admissible at defendant's trial and reinstated defendant's conviction of first degree murder. In reaching that conclusion, the trial court found that defendant had been given his *Miranda* rights at the Plainfield police station prior to making his statements, that there was a "substantially significant" period of time between defendant's illegal arrest and defendant's statements to police, that the incriminating statements Escutia had made to police were a "huge" intervening circumstance, and that the conduct of the police in this case did not rise to "any flagrancy of actual misconduct." After the trial court made its ruling, defendant appealed.

¶ 10       In February 2019, several months after the appeal was filed in this case, Escutia pled guilty in the trial court to second degree murder for the killing of Barrios and was sentenced to 20 years in prison.

¶ 11                                    II. ANALYSIS

¶ 12       On appeal, defendant argues that the trial court erred in (1) finding that defendant's statements to police were sufficiently attenuated from his illegal arrest so as to be admissible at defendant's trial and (2) refusing to allow defendant to call Escutia as a witness at trial, where Escutia was going to assert her fifth amendment right not to testify, and refusing to admit at trial Escutia's petition for an order of protection against Barrios (the victim). We rule only upon the first argument because it dictates the outcome of this case and because the evidence relative to the second argument will likely change upon remand.

¶ 13                    A. Attenuation of Defendant's Statements From Illegal Arrest

¶ 14        As to the first argument, defendant asserts that a review of the totality of the circumstances and the four case law factors for attenuation (set forth below) establishes that attenuation was not present in the instant case and that the trial court's ruling was incorrect. Most notably, defendant contends, the police confronting defendant with Escutia's statements could not be used by the State as an intervening circumstance in support of attenuation because Escutia's statements were taken illegally by the police and were tainted. For that reason, defendant asks that we reverse his conviction and that we remand this case for a new trial with defendant's statement to police suppressed. In the alternative, defendant asks that we remand this case for a new attenuation hearing because his attorney was ineffective in failing to inform the trial court that Escutia's statements to police were suppressed by this court on appeal and that they could not be considered by the trial court as an intervening circumstance.

¶ 15        The State argues that the trial court's attenuation ruling was proper and should be upheld. The State asserts that all four of the case law factors weigh in favor of attenuation. In making that assertion, the State contends that a portion of Escutia's statements to police was not suppressed by this court and the police confronting defendant with that portion of the statements could, therefore, be considered as an intervening circumstance in the attenuation analysis. As for defendant's argument in the alternative, the State agrees that defense counsel should have informed the trial court that this court suppressed a portion of Escutia's statements to police on appeal. The State contends, however, that defendant was not prejudiced by defense counsel's failure to inform the trial court because the remaining portion of Escutia's statements could still be considered by the trial court as an intervening circumstance. For all of the reasons set forth, the State asks that we affirm the trial court's finding of attenuation and that we affirm defendant's conviction of first degree murder.

¶ 16        A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress evidence. See *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Gaytan*, 2015 IL 116223, ¶ 18; *People v. Gempel*, 2016 IL App (3d) 140833, ¶ 56 (applying the dual standard of review for a motion to suppress evidence to a trial court's ruling on attenuation). The trial court's findings of fact are given great deference and will not be reversed on appeal unless they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18; *Gempel*, 2016 IL App (3d) 140833, ¶ 56. However, as to the trial court's ultimate legal ruling on whether suppression is warranted, *de novo* review applies. *Hackett*, 2012 IL 111781, ¶ 18; *Gempel*, 2016 IL App (3d) 140833, ¶ 56. The reviewing court is free to make its own assessment of that and other legal issues, based upon the findings of fact, and to draw its own conclusions. See *Hackett*, 2012 IL 111781, ¶ 18.

¶ 17        It appears from the case law that absent something more, incriminating statements and confessions (collectively referred to hereinafter as statements) made by a defendant following an illegal arrest are generally presumed to be the product of the illegal arrest and to be tainted and inadmissible in a defendant's criminal trial. See *People v. Graham*, 214 Ill. App. 3d 798, 812 (1991). However, such statements may still be admissible—despite the illegal arrest—if the statements are sufficiently attenuated (sufficiently distinguishable from the illegal arrest) so as to be the result of the defendant's free will and to be purged of the taint of the illegal arrest. See *Brown v. Illinois*, 422 U.S. 590, 602 (1975); *People v. Foskey*, 136 Ill. 2d 66, 85 (1990); *People v. White*, 117 Ill. 2d 194, 222 (1987); *Gempel*, 2016 IL App (3d) 140833, ¶ 55. In determining whether attenuation exists, courts consider the following four case law factors:

(1) whether *Miranda* warnings were given to the defendant, (2) the proximity in time (temporal proximity) between defendant's arrest and the statements, (3) whether there were any intervening circumstances, and (4) the purpose and/or flagrancy of the police misconduct. *Brown*, 422 U.S. at 603-04; *Foskey*, 136 Ill. 2d at 85-86; *White*, 117 Ill. 2d at 222; *Gempel*, 2016 IL App (3d) 140833, ¶ 55. The last two factors are by far the most significant. See *People v. Jennings*, 296 Ill. App. 3d 761, 765 (1998). In a suppression proceeding, the State has the burden in the trial court to prove attenuation by clear and convincing evidence. *Brown*, 422 U.S. at 604; *Foskey*, 136 Ill. 2d at 86; *White*, 117 Ill. 2d at 222; *Graham*, 214 Ill. App. 3d at 812; *Gempel*, 2016 IL App (3d) 140833, ¶ 55. The issue of attenuation must be determined based upon the unique facts of each individual case. See *Brown*, 422 U.S. at 603. No single fact in the analysis is dispositive. *Id.*

¶ 18     After having reviewed the record in the present case, we find that defendant's statements to police were not sufficiently attenuated from the illegal arrest so as to be admissible in defendant's criminal trial. See *id.* at 602-04; *Foskey*, 136 Ill. 2d at 85-86; *White*, 117 Ill. 2d at 222-23; *Gempel*, 2016 IL App (3d) 140833, ¶ 55. Three of the four factors noted above weigh against a finding of attenuation.

¶ 19     First, the police misconduct in this case was flagrant and/or purposeful. See *Gempel*, 2016 IL App (3d) 140833, ¶ 58 (noting that police action is flagrant where the investigation is carried out in such a manner as to cause surprise, fear, and confusion, or where the investigation otherwise has a quality of purposefulness in that the police had embarked upon a course of illegal conduct in the hope that some incriminating evidence might be found). The police in this case violated defendant's and Escutia's fourth amendment rights when they illegally arrested defendant and Escutia in defendant's home during the early morning hours without a warrant or probable cause. See *Gutierrez*, 2016 IL App (3d) 130619, ¶¶ 57-71; *Escutia*, 2018 IL App (3d) 140509-U, ¶ 29. After doing so, the officers transported defendant and Escutia to the police station for interrogation and used an improper question-first, warn-later technique to illegally obtain Escutia's incriminating statements. See *Escutia*, 2018 IL App (3d) 140509-U, ¶ 29. The police later confronted defendant with those illegally obtained statements to unlawfully obtain incriminating statements from defendant. Thus, when taken as a whole, the facts of this case (and Escutia's) show that the police embarked upon a course of flagrant and/or purposeful misconduct by employing a series of improper tactics with the hope of turning up evidence on Barrios's murder. See *Taylor v. Alabama*, 457 U.S. 687, 693 (1982) (implying that the police conduct was flagrant and/or purposeful where the police effectuated an investigatory arrest on the defendant without warrant or probable cause and involuntarily transported the defendant to the police station for interrogation in the hope that something would turn up); *People v. Avery*, 180 Ill. App. 3d 146, 156 (1989) (implying that the police conduct was flagrant and/or purposeful in a murder investigation where the police repeatedly "rounded up" and questioned teenagers in the area of the crime in the hope that something would turn up); *Gempel*, 2016 IL App (3d) 140833, ¶ 72 (finding that the conduct of the police was flagrant, based, in part, upon the fact that the police investigators arrested the defendant without a warrant or probable cause hoping that other evidence, such as a confession, would turn up). The trial court's finding to the contrary was made without knowledge of our ruling in the *Escutia* appeal and was against the manifest weight of the evidence (see *Hackett*, 2012 IL 111781, ¶ 18; *Gempel*, 2016 IL App (3d) 140833, ¶ 56) as the

trial court largely discounted our finding that defendant had been illegally arrested in making its determination.

¶ 20    Second, despite the State's assertion to the contrary, there were no intervening circumstances in this case. Escutia's statements to police were tainted, and under the established law in this area, the police confronting defendant with those statements could not be considered an intervening circumstance. See *Avery*, 180 Ill. App. 3d at 155-56 (recognizing that confronting an arrestee with incriminating evidence will only purge the taint of an illegal arrest when the evidence used to confront the arrestee is not the product of an illegal arrest or otherwise tainted). Thus, even if we assume for argument's sake that a portion of Escutia's statements was not suppressed as a result of Escutia's appeal, as the State suggests, we would still have to reject the State's claim of an intervening circumstance because it is clear from the videotape of defendant's interrogation that defendant was confronted with the entire substance of Escutia's statements and not just the allegedly unsuppressed portion. See *People v. Clay*, 349 Ill. App. 3d 517, 524 (2004) (indicating that when the police obtain statements from a defendant by confronting the defendant with both legally obtained and illegally obtained evidence, the court must suppress the statements unless the prosecution proves that the illegally obtained evidence did not influence the content of the defendant's statements or the defendant's decision to make the statements).

¶ 21    Third, although there was a time period of about six hours from when defendant was illegally arrested until when he gave his statements to police, that time span is not particularly significant to the attenuation analysis in this case (see *Jennings*, 296 Ill. App. 3d at 764 (noting that the proximity in time between the illegal arrest and the making of the statement is arguably of little significance in judging attenuation)) and does not favor attenuation. Of particular importance here, during that entire time period, defendant remained in police custody, and as noted above, there were no intervening circumstances to break the causal connection between defendant's illegal arrest and his statements to police. See *Graham*, 214 Ill. App. 3d at 813 (indicating that the key to determining whether the passage of time has purged the taint of an illegal arrest is to examine whether any intervening events occurred during that time period and the nature of those events). In addition, since there were no intervening circumstances, it cannot be said that defendant in this case had an opportunity to reflect upon his situation after being confronted with intervening circumstances, as is sometimes pointed out in the case law on attenuation. See, *e.g.*, *Gempel*, 2016 IL App (3d) 140833, ¶ 81 (recognizing that where a defendant is confronted with intervening circumstances, a significant lapse of time between the illegal arrest and the defendant's statement may help to remove the taint of the illegal arrest by allowing the defendant time to reflect upon his situation).

¶ 22    Indeed, the only factor in this case that weighs in favor of attenuation is that defendant was given his *Miranda* warnings at the police station prior to making his statements. As the courts have repeatedly noted, however, *Miranda* warnings alone are generally not enough to purge the taint of an illegal arrest. See, *e.g.*, *id.* ¶¶ 89-90.

¶ 23    In sum, based upon our consideration of the four case law factors, we find that the evidence presented in the trial court at the suppression proceeding was insufficient to establish attenuation. See *Brown*, 422 U.S. at 602-04; *Foskey*, 136 Ill. 2d at 85-86; *White*, 117 Ill. 2d at 222-23; *Gempel*, 2016 IL App (3d) 140833, ¶ 55. Defendant's statements to police, therefore, must be suppressed. See *Brown*, 422 U.S. at 602-04; *Foskey*, 136 Ill. 2d at 85-86; *White*, 117 Ill. 2d at 222-23; *Gempel*, 2016 IL App (3d) 140833, ¶ 55. Accordingly, we reverse

defendant's conviction of first degree murder and remand this case for a new trial with defendant's statements to police suppressed. We note for the purpose of the remand, however, that a retrial in this case is not barred by the double jeopardy clause because the evidence presented at defendant's original trial, including his now-suppressed statements to police, was sufficient to prove defendant guilty of the offense. See *People v. Lopez*, 229 Ill. 2d 322, 366-68 (2008) (indicating that the double jeopardy clause does not prohibit retrying a defendant whose conviction has been negated due to an error in the proceedings leading to the conviction unless the evidence presented at the original trial, including the improperly admitted evidence, when viewed in the light most favorable to the State, was insufficient to sustain a conviction).

¶ 24    In addition, because we have found that the trial court's attenuation ruling in this case was erroneous, we need not address defendant's second argument on this issue—that his attorney provided ineffective assistance of counsel at the attenuation hearing.

¶ 25                    B. The Trial Court's Refusal to Allow Defendant to Call
Escutia as a Witness and Its Refusal to Admit Escutia's Petition
for Order of Protection Against Barrios

¶ 26    As his second point of contention on appeal, defendant argues that the trial court erred in refusing to allow him to call Escutia as a witness at trial, where Escutia was going to assert her fifth amendment right not to testify, and in refusing to allow defendant to admit Escutia's petition for an order of protection against Barrios (the victim). Having ruled as to defendant's first argument on appeal that defendant's conviction must be reversed, and this case must be remanded for a new trial, we decline to rule upon defendant's second argument on appeal because the evidence relative to that argument will likely change upon remand. As noted above, Escutia pled guilty in the trial court to second degree murder for the killing of Barrios. A question arises, therefore, whether Escutia will still be able to assert her fifth amendment right not to testify at defendant's trial. See *People v. Dmitriyev*, 302 Ill. App. 3d 814, 817 (1998) (recognizing that a defendant generally waives the fifth amendment right against compulsory self-incrimination once the defendant has entered a plea of guilty to the offense in question).

¶ 27                                III. CONCLUSION
¶ 28    For the foregoing reasons, we reverse the judgment of the circuit court of Will County and remand this case for a new trial with defendant's statements to police suppressed.

¶ 29    Reversed and remanded.

¶ 30    JUSTICE WRIGHT, dissenting:
¶ 31    Even though I share the views expressed by the trial court following remand, these views must yield to the law of the case. *Escutia*, 2018 IL App (3d) 140509-U; *Gutierrez*, 2016 IL App (3d) 130619. In other words, if I could consider the facts in the instant appeal in a vacuum, I would affirm the trial court's decision finding that Escutia's confession constituted a sufficient intervening circumstance for attenuation. However, the law of the case requires me to begin this separate offering based on the premise that Escutia's incriminating statements resulted from intentional and flagrant police misconduct on the part of Detectives Siegel and Kivisto.

Therefore, I concur with the majority's view that Escutia's confession should not have been considered by the trial court as an intervening circumstance.

¶ 32 Nonetheless, since our court may affirm the trial court's finding on any ground supported in this record, I would affirm the trial court's decision for the reasons that follow. To understand my view, a brief review of the facts may be helpful. In this case, Escutia had an active order of protection against the murder victim. Consequently, with some urgency, law enforcement located Escutia, hoping Escutia could provide information about possible murder suspects based on her personal relationship with the victim. At the time law enforcement located Escutia, they had no reason to suspect that defendant would be at the residence or that defendant was a participant in the murder.

¶ 33 After the early morning chaos at the residence, and after being informed of the victim's murder, both Escutia and defendant agreed to travel to the Plainfield Police Department to be interviewed. The Plainfield police officers realized that they did not have enough room in their squad cars to bring both Escutia and defendant to the Plainfield Police Department. Therefore, the Chicago police officers were enlisted to bring defendant to a nearby police station in Chicago while Escutia was driven to Plainfield.

¶ 34 The record shows that the Chicago police officers transported defendant in a cageless vehicle. Based on policy and officer safety concerns, the Chicago police officers handcuffed defendant for the ride to the Chicago police station. After arriving at the Chicago police station, defendant's handcuffs were removed. In all, defendant was likely handcuffed for "only a few minutes." *Gutierrez*, 2016 IL App (3d) 130619, ¶ 60.

¶ 35 Based on my careful review of the record, I am convinced the trial court had command of a somewhat complicated record. The trial court clearly understood that Escutia was improperly interrogated in the squad car *en route* to Plainfield while defendant was not questioned at all during transportation. In fact, the trial court expressly found that "there was absolutely no communication regarding the nature of what occurred in Plainfield with [defendant], even before he was placed in handcuffs, and certainly during the entire time that he was transported from Chicago to Plainfield, there was no communication whatsoever." The record provides ample support for this factual finding by the trial court, which is not challenged on appeal.

¶ 36 In addition, the trial court found that there was "no evidence ever presented that the Plainfield Police ordered, directed, or [in] any way ensured that the defendant was handcuffed. In fact, there was no evidence at all that they even knew that he had been handcuffed. It was the policy of the Chicago Police that [defendant be placed in handcuffs,] *** that was not at the direction of Plainfield or anyone who was responsible for the actual investigation or ultimate interview and prosecution of [defendant]."

¶ 37 The trial court also found that the Plainfield officers that transported defendant to the Plainfield police station were, at the time of transport, uninformed that Escutia had made statements implicating defendant in the murder. This finding by the trial court is mirrored by facts discussed by the majority in *Gutierrez*. See *id.* ¶ 13.

¶ 38 These events are significant to me because unlike Escutia's case, the officers that transported defendant did not engage in the improper question first and warn later approach condemned by our court in *Escutia*. *Escutia*, 2018 IL App (3d) 140509-U, ¶ 29. Further, I note that approximately *six* hours passed after defendant's handcuffs were removed upon arrival at the Chicago police station. Having been *unrestrained* for several hours, defendant was Mirandized at the Plainfield Police Department immediately before any questioning began.

¶ 39 In my opinion, three of the four relevant factors support the trial judge's finding of attenuation. First, defendant was Mirandized immediately before he was interviewed. Second, a significant period elapsed between the time defendant's handcuffs were removed and the time defendant waived his *Miranda* rights. Third, and perhaps most importantly, the officers that interacted with and ultimately interviewed defendant have not been accused of any misconduct or flagrant abuse of power. In my opinion, the flagrant misconduct of Detectives Siegel and Kivisto should not be imputed to the officers that had contact with defendant.

¶ 40 For these reasons, I would affirm the trial court's attenuation finding and the trial court's decision to deny defendant's motion to suppress.